FRED D. OELLIEN, Successor in Trust, etc., Respond-
ent, v. FRANCES F. GALT, Executrix, Appel-
lant.

St. Louis Court of Appeals, October 1, 1910.

1. TRUSTS: Duty of Trustee: Payment of Taxes. A trustee
authorized to pay the net income of the trust property to the
beneficiary, who paid the income to the beneficiary without
first discharging the taxes, and thereby allowed penalties to
accumulate, committed a technical breach of the trust.

2. ———: ———: ———: Estoppel of Beneficiary to Recover
for Breach. Though a trustee has technically broken his trust,
by permitting penalties for non-payment of taxes to accrue,
equity will not make him account for the loss to the beneficiary,
where such breach was authorized, induced, or concurred in by
the beneficiary while *sui juris* and not otherwise incapacitated.

3. ———: Reimbursement of Trustee for Advances. A trustee
may reimburse himself for advancements out of money in his
hands, belonging to the estate.

4. **APPELLATE PRACTICE:** Conclusiveness of Finding on Conflicting Evidence. The Court of Appeals will not disturb a finding on testimony which is susceptible to two or three different constructions.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

MODIFIED AND AFFIRMED.

*Thos. F. Galt* for appellant.

(1) The services of a trustee are paid according to the amount of work and responsibility connected with trust estate. Abes v. Scudder, 11 Mo. App. 168; Kemp v. Foster, 22 Mo. App. 643. (2) A trustee has the right, power and authority to employ a real estate agent to rent houses and collect the rents. Finley v. Schlueter, 54 Mo. App. 455; Perry on Trusts, 912. (3) The *cestui que trust* cannot complain of a breach of trust where he has ordered or acquiesced in the breach. Newton v. Rebenack, 90 Mo. App. 650. (4) The duty of a trustee is that he shall give unto the trust estate the same thought and intelligence that an ordinary man brings to such affairs.

*Marion C. Early* for respondent.

(1) This was an active, executory trust, and the *cestui que trust* has only a life estate in the net profits. No discretion was vested in the trustee, save as to the management of the property and the manner of paying the net income to the *cestui que trust*. The trustee is responsible for any breach resulting in a loss to the estate. Hildebrandt, trustee, v. Wolff, 79 Mo. App. 334. (2) The account filed shows rents collected each year sufficient to have paid the taxes, and there being no legal excuse offered for the failure, the trustee and not the trust estate must bear the penalties suffered through

the omission. The trustee was vested with no discretion as to the benefits to be paid the *cestui que trust*. Bennett v. Bennett, 66 Ill. App. 28; Lampert v. Haydel, 96 Mo. 439; Partridge v. Cavender, 96 Mo. 452, 41 L. R. A. 806, 55 L. R. A. 727; 23 Am. and Eng. Ency. Law (1 Ed.), p. 5. (3) The *cestui que trust* had only a life estate in the net proceeds, with remainder to his heirs, or if he leaves no heirs, then to the heirs of the testator. The trustee cannot, therefore, avoid liability through the alleged acquiescence of the *cestui que trust,* and especially if he knew him to be irresponsible for his acts. Newton v. Rebenack, 90 Mo. App. 650. (4) The compensation of the trustee, as fixed by the trial judge, was the reasonable value under the evidence adduced. There is no evidence on which to base any greater amount, and the finding should not, therefore be disturbed.

NORTONI, J.—This is a proceeding in equity for an accounting. The court found the issue for plaintiff and gave judgment against defendant for $1,284.57. Defendant prosecutes the appeal.

One of the plaintiffs is trustee under the will of Robert Anderson, deceased, and successor to defendant's testator who formerly occupied the same position of trust under the will. The other plaintiff is Robert Spain Anderson, *cestui que trust* under the will of his father, Robert Anderson, and as such is the real party in interest; for the accounting is sought in his favor. Defendant is the executrix of the last will of Smith P. Galt, who in his lifetime was the original trustee under the will of Robert Anderson, to the use of plaintiff, Robert Spain Anderson, the *cestui que trust*.

It appears that Robert Anderson departed this life some time prior to April 1, 1892, and by his last will settled a trust estate in favor of his son, Robert Spain Anderson, with remainder over in event of his death to the heirs of said Robert Spain Anderson, if any, and in

event there were none, then to the heirs of the settler of
the trust. By the terms of the will, Smith P. Galt was
appointed trustee thereunder and vested with the title
to two parcels of real estate, known as 2639 and 2641
Washington avenue, in the city of St. Louis, the same
being two residences occupied by tenants. The will di-
rected that out of the net income from the property,
after deducting all payments and expenditures incident
to the trust estate, its management and control, includ-
ing a reasonable compensation to the trustee, the trustee
should pay to Robert Spain Anderson during his life,
for his maintenance and support, such sums from time
to time and at such times as the trustee in his discretion
deemed best, and upon the death of Robert Spain An-
derson, the remainder, as otherwise provided in the will,
should be payable to the lawful descendants of Robert
Spain Anderson, if any. In the event Robert Spain
Anderson left no heirs, the remainder should go to the
heirs at law of Robert Anderson, settler of the trust.

Smith P. Galt entered upon the discharge of the
trust in April, 1892, and discharged the duties thereof
until the time of his death, June 2, 1905. During all of
those years he looked after the property, collected or
caused to be collected the rents, made repairs; paid the
insurance, etc., and paid different sums of money to the
cestui que trust and others for him. After the death
of the trustee, William Baggot was appointed his suc-
cessor in trust, in accordance with the will of Robert
Anderson, and some time thereafter, he, together with
Robert Spain Anderson, the cestui que trust, instituted
this suit for an accounting against the defendant, who
is executrix of the last will of Smith P. Galt, the origi-
nal trustee. The court made an order on defendant to
state an account of the trust which was complied with.
To the account thus stated, plaintiffs filed certain ex-
ceptions and the cause was continued from term to
term, but finally heard and disposed of by a judgment
in which the exceptions to the trustee's account were

sustained, the account surcharged, and a balance of
$1284.57 declared to be in the hands of the executrix
as funds of the trust estate. Judgment was given for
this balance, and it was ordered to be paid to the plain-
tiff trustee for the benefit of the trust estate.

Since the appeal was perfected to this court, Wil-
liam Baggot, trustee, has departed this life and his
death has been suggested here. The case now stands re-
vived in the name of Fred D. Oellien, who has been sub-
stituted as trustee under the will.

In the statement of account, as prepared and filed
by defendant, it was shown that there remained a bal-
ance in the hands of the executrix to the credit of the
trust estate of $831.62. This much is conceded and there
is no controversy with respect to this matter, but in a
claim for compensation to the trustee this amount is
sought to be absorbed. Plaintiffs insist they are en-
titled to a further amount of $701.05 which the account
of the trustee shows was paid out by him as penalties
accrued because of the non-payment of the current taxes
accrued on the property during the years 1895, 1896,
1897, 1898, 1899, 1900, 1901, 1902. They insist the
account should be surcharged to such extent. The ar-
gument is that as by the terms of the will declaring
the trust the trustee was directed to pay the funds to
the *cestui que trust* out of the net income of the estate,
it devolved upon him, of course, to first pay the taxes
on the property and not permit penalties to be levied
against it for their non-payment. The statement of ac-
count shows that during a portion of the years men-
tioned the income from the property had materially de-
creased and practically all of the money was paid by the
trustee to the *cestui que trust,* which occasioned the
taxes to lapse and the penalties to accrue. There can
be no doubt that there is a technical breach of the trust
with respect of this matter, for, beyond question, it was
the duty of the trustee to first pay the taxes from the
income of the property and make no payments to the

*cestui que trust* until after such was done. But a recovery on this score should not be allowed to the plaintiffs for the reason it appears that the *cestui que trust* both induced and concurred in the breach. Indeed, the proof is clear that the trustee defaulted in paying the taxes for the several years referred to because Robert Spain Anderson, the *cestui que trust,* constantly importuned him for money to relieve his urgent necessities. There is not a suggestion throughout the case that the trustee acted in bad faith nor that he derived any benefit himself from omitting to pay the taxes when due. The proof shows that Smith P. Galt, the trustee, was kind and indulgent to a fault and was overcome by the constant coaxing and begging of the *cestui que trust* for assistance in time of need. Because of this, he was led to pay out money to the *cestui que trust* for the purpose of sustaining him when in circumstances of distress and thus permitted the taxes to remain unpaid and the penalties to accrue. It is conceded throughout the case that Robert Spain Anderson, the *cestui que trust,* was unemployed for several years and without funds, except such as he obtained by constantly importuning Mr. Galt to advance him. During the years in question, the *cestui que trust* was at Washington, D. C., and his wife in the city of St. Louis. Numerous letters are in evidence showing that the *cestui que trust* was constantly imploring the trustee to remit him different amounts for the purpose of aiding the distressed condition of himself and his family. Letters from the trustee to the *cestui que trust,* which are in evidence, indicate a constant effort put forward on the part of the trustee to withstand these appeals and convey information to the effect that taxes were unpaid, the trust account overdrawn, etc. Notwithstanding these letters and adjurations of the trustee, the *cestui que trust* continued to write pitiful accounts of his distress, begging money with which to pay his board bills, his laundry, his doctor, for the relief of his wife, etc. It appears

that during this time many letters from the landlady with whom the *cestui que trust* boarded and the physician who treated him were written to the trustee, with the acquiescence and under the instructions of the *cestui que trust,* for money, which letters conveyed the information that unless the desired amounts were forwarded he would be ejected from his boarding house or his medical treatment would be suspended. In one of these letters, dated October 25, 1897, the *cestui que trust* wrote the trustee to the effect that he had sent his wife a receipt for twenty-five dollars, which she would present to him in St. Louis in order to obtain that amount from the estate, and said:

"Mr. Galt, she must have this money, taxes or no taxes, repairs or no repairs. She is suffering and so am I and as you have let us have so very little the past year you certainly ought to give her twenty-five dollars to get clothes."

On February 19, 1899, the *cestui que trust* wrote the trustee:

"Pay up part of the back taxes, but if you haven't sufficient funds for all, Mrs. A. is distressed in mind and body as well as myself. I bespeak for her kind treatment at your hands and trust you will arrange to pay her a certain amount commencing March 1st, for the next three or four months at least, on the first of each month, and thereby lift a load from the mind of

"Your struggling ward,
"R. SPAIN ANDERSON."

It is conceded that because of appeals such as these the trustee was led to forego paying the taxes, to the end of advancing money for the relief of the *cestui que trust* and his wife. As a result of the taxes remaining unpaid, of course the penalties accrued and in the amount of $701.05. It appears that afterwards when suit was about to be instituted against the property for the taxes, the trustee advanced as much as fifteen hun-

dred dollars of his own funds, without interest, to re-
lieve the situation, pay up the taxes and penalties and
preserve the trust estate. In such circumstances, to per-
mit a recovery for the amount of these penalties as in
favor of the "struggling ward" would be not only un-
just but highly obnoxious to every precept of equity
and good conscience. Trustees are held to a high de-
gree of accountability, but those who seek the aid of a
court of equity must come with clean hands, a pure
heart and free from iniquity. He who seeks equity
must do equity. In accordance with these principles,
the rule obtains in equity jurisprudence to the effect
that though a trustee may have technically breached his
trust, the court will not afford relief to the *cestui que
trust* on that account if it appears that he, while *sui
juris* and not otherwise incapacitated, has authorized,
induced or concurred in doing the acts which operated
the breach of the trust and accepted the benefits there-
of. This rule ought not to be applied promiscuously,
but no one can doubt that it obtains in cases such as
this one, where the breach of trust results from ad-
vancements made by the trustee at the urgent request
of the *cestui que trust* for the purpose of relieving dire
necessities. [Newton v. Rebenack, 90 Mo. App. 650;
28 Am. and Eng. Ency. Law (2 Ed.), 1123, 1124.] It
is true, too, this rule may not obtain in cases where
the breach of trust has diminished the capital or cor-
pus of the trust estate and the trust instrument creates
a remainder over in favor of another; for the rights of
the remainderman ought not to be impaired, though
the conduct of the life tenant induced the breach. But
such is not the case here; for in this instance, the cap-
ital or corpus of the trust estate was not impaired in
the least. Under the terms of the will, Robert Spain
Anderson was, in the discretion of the trustee, entitled
to the net income of the property and he is the real
party in interest in the present action; for besides being
one of the plaintiffs, his co-plaintiff, Baggot, the trustee,

seeks to recover to a use available to him. It appears the penalties for non-payment of taxes were permitted to accrue because the *cestui que trust*, through constant importunities setting forth his necessities, succeeded in procuring the funds from the trustee which should have been applied to the payment of taxes and that afterward such penalties were liquidated by moneys advanced by the trustee without interest. This indebtedness of the estate to the trustee for the advancement was finally liquidated by the trustee withholding from the *cestui que trust* an amount of money sufficient to reimburse him for paying the taxes and penalties.

There can be no doubt that a trustee may reimburse himself out of money in his hands belonging to the estate for advancements. [2 Perry on Trusts (5 Ed.), sec. 485.] From the statement of the account filed, it appears the trustee had reimbursed himself out of funds which might rightfully have been paid to the *cestui que trust* or life tenant for the amount of something over fifteen hundred dollars which he advanced for the purpose of paying up the back taxes and accrued penalties. After the trustee's reimbursement, as indicated, there still remained, besides the original capital or corpus of the estate, a balance in his hands of $831.62, funds of the estate from rents. It is therefore clear the reimbursement of the trustee was had from funds which otherwise would have been paid to Robert Spain Anderson, the life tenant, and therefore under no possible theory could the remainderman be affected thereby or the corpus of the estate impaired. The capital or corpus of the estate remained intact throughout and so continues. The case of Hildenbrandt v. Wolff, 79 Mo. App. 333, relied upon by plaintiff is not in point; for there the trustee had neglected to pay taxes on the trust estate and instead paid the money over to the life tenant during her last sickness. The life tenant died and the unpaid current taxes were therefore an incumbrance

against the corpus of the estate when it passed to the remainderman. In the case referred to, the court stated the rule that the obligation rests with the life tenant to pay current taxes and declared the trustee was liable to respond as for a breach of the trust to the remainderman because the corpus of the estate passed to him incumbered with current taxes. It will be observed upon scrutiny that case proceeded at the instance of the remainderman and subsequent trustee against the trustee who had neglected to pay the taxes. The neglect of the trustee to pay the taxes in that instance, though induced by the stress of circumstances and sickness of the life tenant, operated to incumber the rights of the remainderman. In this case, the remainderman may not complain, for the estate will pass to him unincumbered by the penalties occasioned through the technical breach of trust, as the matter was long since liquidated and discharged by the trustee withholding the amount from funds which otherwise would have been paid to the life tenant, who induced and concurred in the breach.

We have examined and pondered over the question with respect to the trustee's compensation and feel that the trial court's ruling thereon should be affirmed. It appears the defendant introduced no evidence whatever on this matter and relies wholly upon that given by plaintiff. The evidence introduced by plaintiff on this question, as reproduced in the abstract, is not clear and may bear two or three different constructions. In view of this fact, we defer to the judgment of the trial court who had the witnesses before it. Though the compensation allowed seems to be meager, we are not inclined to enlarge it without all of the proof before us.

The judgment should be modified by deducting $701.05 paid by the trustee as penalties on the taxes and, after such modification, affirmed for the balance due. The item of $701.05 surcharged by the trial court will be reinstated in the account and the deduction from the amount in defendant's hands as compensation to the

trustee approved. The balance thus found to be in defendant's hands for which the Smith P. Galt Estate should account is $583.52, with interest.

It is therefore ordered and adjudged that the plaintiffs have and recover of defendant, for the use and benefit of the trust estate, the sum of $583.52, with six per cent interest thereon from the date of the judgment of the circuit court and that the costs of this appeal be taxed against the plaintiffs. It is so ordered. All concur.